IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ELIN NAPOLEON,

    Petitioner,        No. CIV S-10-0940 GGH P

    vs.

RICHARD B. YVES,

    Respondent.        FINDINGS AND RECOMMENDATIONS

_____/

Introduction

    Petitioner is a federal prisoner proceeding pro se with an application for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  Pending before the court is respondent's motion to dismiss (MTD), filed on September 24, 2010, to which petitioner filed an opposition on January 21, 2011.[2]

Petition

    Petitioner, who was incarcerated at Federal Correctional Institution (FCI) -

---

[1] Petitioner indicates he is serving a sentence for conspiracy to import cocaine. Petition, p. 2.

[2] In response to a show cause order for failure to oppose the motion to dismiss, filed and served on November 22, 2010, and re-served on December 27, 2010 in light of a change of address notice filed on December 9, 2010, petitioner indicated he had not been served with the MTD. By order filed on January 5, 2011, respondent was directed to re-serve the MTD. Petitioner's subsequent opposition was filed timely. Respondent elected not to file a reply.

1

Herlong at the time of filing his petition, challenges the extended duration of his confinement, adhered to at Herlong, as a result of an alleged violation of his constitutional due process rights arising from, inter alia, a disciplinary hearing which resulted in his being deprived of twenty-seven (27) days of good conduct credits while confined at a private Eden, Texas detention facility run by a private company, Corrections Corporation of America (CCA).  Petition, pp. 7-15;[3] MTD, pp. 1-2.

Evidently to provide background to his challenge, petitioner claims to have been issued an incident report while he was at the Eden Detention Center (hereafter, EDC) in retaliation for his having spoken with Federal Bureau of Prison (hereafter, BOP) personnel who visited EDC; the incident report resulted in his placement in the EDC special housing unit, or SHU.  Petition, p. 7.  After having been housed in the SHU for several months, an unnamed captain demanded that petitioner give up his sweatsuit, which he was permitted "due to the brutal cold" of his room.  Id.  This action was also retaliatory, according to petitioner, this time for petitioner's having mailed out a copy of a memo which he was mistakenly given which described a conspiracy to violate petitioner's constitutional rights.  Id.[4]  Petitioner was issued another incident report for refusing to give up his sweatsuit.  Id., at 7-8.

On February 12, 2008, a hearing was held concerning, presumably, the second incident report regarding petitioner's refusal to give up his sweatsuit, wherein the captain[5] proposed to expunge it, if petitioner would return the (undescribed) memorandum, which, however, petitioner had already mailed to his legal representative.  Petition, p. 8.  When

---

[3] The undersigned references the pagination of the court's electronic docketing system.

[4] The court notes that petitioner fails to describe the contents of the alleged memorandum or how it violated his rights; however, reference to an exhibit indicates that petitioner means two memos he was supposedly inadvertently given concerning an investigation into who had opened his certified privileged mail directed to the Regional Office. Petition (docket # 1), p. 18; Supplemental Exhibits from petitioner (docket # 4), pp. 5 -6.

[5] The court discerns the captain's name to be Overstreet, but only by reference to an exhibit.  Petition, Exh. A, p. 18.

2

petitioner refused to return the memo, the captain "became furious" and tightened petitioner's handcuffs to break his wrists, and took petitioner to his room, leaving him for hours in "unbearable pain." Id. Petitioner lost control of his bowels, after which the captain returned with a SWAT team and dragged petitioner to a room where the captain activated the sprinkler system to flood the room in which petitioner had been placed. Id. Thereafter, the captain fabricated a charge against petitioner for "destroying government property," the property being the sprinkler head which the captain himself had tampered with. Id. As a result of this incident, petitioner was subjected to a disciplinary hearing in absentia,[6] at which petitioner was assessed the 27 days of good time credit loss. Id. at 8-9.

Motion to Dismiss

Respondent moves for dismissal of this petition pursuant to non-enumerated Fed. R. Civ. P. 12(b), for petitioner's alleged failure to exhaust administrative remedies. Notice of Motion, p. 1; Memorandum of Points and Authorities in Support of MTD (hereafter, MTD refers to the supporting memorandum), pp. 1-5. As grounds for the motion, respondent cites Duenez v. Adler,1:07-cv-01724-OWW TAG (HC) (E.D. Cal. Feb. 6, 2009) (respondent may file motion to dismiss for failure to exhaust administrative remedies in lieu of answer)[7] and Inlandboatmens Union of the Pacific v. Dutra Group, 279 F.3d 1075, 1078 n. 2 (9th Cir. 2002) ("a motion to dismiss for a failure to exhaust non-judicial remedies is properly considered a 'nonenumerated' Rule 12(b) motion"). MTD, p. 3. The Ninth Circuit has for some time held that a federal prisoner's (or former federal prisoner's) challenge to "the fact or duration of his confinement" is

---

[6] Notwithstanding that petitioner now claims he was absent from the hearing at which his credits were lost, in one of his exhibits he states that on April 1, 2008, he appeared before a Discipline Hearing Officer (DHO), was found guilty, and was assessed a 27-day good time credit loss. Petition, Ex. A, p. 18. Possibly, petitioner means to signify that the actual assessment of the credit loss was not made at the hearing, but that is completely unclear.

[7] The court analogized a motion to dismiss for lack of state court exhaustion in § 2254 cases to a dismissal motion based on a lack of exhaustion of administrative remedies in § 2241. These findings and recommendations were adopted by order filed on March 9, 2009.

properly construed as a petition for writ of habeas corpus under 28 U.S.C. § 2241.  MTD, p. 4, citing Tucker v. Carlson, 925 F.2d 330, 332 (9th Cir. 1991).  Respondent relies on Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986), for the principle that federal prisoners must exhaust their federal administrative remedies before bringing a habeas petition in federal court.  MTD, p. 4.  Another case cited by respondent focused solely toward requiring exhaustion of administrative procedures with regard to a now-obsolete federal prison parole procedure, nevertheless does make clear the rationale behind the administrative exhaustion requirement.  MTD, p. 4, citing Ruviwat v. Smith, 701 F.2d 844, 845 (1983) (allows appropriate development of factual record in expert forum; saves the court's time should the relief sought possibly be available at the administrative level; and allows the administrative agency an opportunity to correct errors).  Respondent also cites Francis v. Rison, 894 F.2d 353, 354 n.1 (9th Cir. 1990), for the proposition that when administrative remedies are still available for any claims, the entire petition must be dismissed unless there are extraordinary circumstances.  However, the Ninth Circuit in that case made clear, in vacating the district court's dismissal of a petition based on lack of exhaustion of administrative remedies and remanding the case, that should no administrative remedies remain available, respondent having failed to raise a procedural default argument and thus having waived it, the district court should reach the merits of petitioner's claims.  Id. at 355.

Discussion

        There is no statutory requirement, pursuant to 28 U.S.C. § 2241, that federal prisoners must exhaust administrative remedies before filing a habeas corpus petition in court, thus it is not a jurisdictional prerequisite.  Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), overruled on other grounds by Reno v. Koray, 515 U.S. 50, 115 S. Ct. 2021 (1995).  Nevertheless, federal courts "require as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241.... Prudential limits, like jurisdictional limits and limits on venue, are ordinarily not optional." Castro-Cortez

v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001), abrogated on another ground by Fernandez-Vargas v. Gonzales, 548 U.S. 30, 126 S. Ct. 2422 (2006); see also, Cristobal v. Cruz, 2007 WL 2746742 *1 (N.D. Cal. 2007). Thus, while "courts have discretion to waive the exhaustion requirement when prudentially required, this discretion is not unfettered." Laing v. Ashcroft, 370 F.3d 994, 998 (9th Cir. 2004). Requiring administrative exhaustion (1) allows for "the appropriate agency to develop a factual record and apply its expertise" which "facilitates judicial review;" (2) permits agencies to grant the requested relief thus conserving judicial resources; and (3) "fosters administrative autonomy" by providing agencies an opportunity to correct their own mistakes. Sanders v. Warden, USP-Allenwood, 2008 WL 4006755 *1 (M.D. Pa. 2008), quoting Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir.1996). Nonetheless, as articulated by the Ninth Circuit:

> [w]e do not hold that the exhaustion requirement can never be waived. In *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir.1981), we noted that "there are a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." See also *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2nd Cir.2003) ("Specifically, exhaustion of administrative remedies may not be required when (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.") (internal quotation marks omitted). Similar concerns govern a court's determination of whether to excuse a failure to exhaust judicial remedies.

Laing v. Ashcroft, 337 F.3d at 1000-01; see also, Murgia v. Copenhaver, 2009 WL 3707113 *2 (N. D. Cal. 2009).

Finally, as in all habeas corpus matters, petitioner has the burden of demonstrating exhaustion in a § 2241 habeas petition. Coady v. Vaughn, 251 F.3d 480, 488 (3rd Cir. 2001); Williams v. O'Brien, 792 F.2d 986 (10th Cir. 1986).

\\\\\

1     *Administrative Appeal Process*

2     The Bureau of Prisons ("BOP") has established a multi-tier system by which a prisoner may seek formal review of any aspect of his imprisonment. See 28 C.F.R. §§ 542.10-542.16 (1994). First, "[i]nmates shall informally present their complaints to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for Administrative Remedy." *Id*., at § 542.13(a). Second, "[i]f an inmate is unable to informally resolve his complaint, he may file a formal written complaint [to the warden], on the appropriate form, within twenty (20) calendar days of the date on which the basis of the complaint occurred." *Id*., at § 542.15(a). In the event the inmate is dissatisfied with the warden's response, he may file an appeal to the BOP Regional Director within twenty (20) days. Id., § 542.15(a). Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed to the BOP Central Office within thirty (30) calendar days from the date of the Regional Director's response. *Id*. No administrative remedy appeal is considered to have been fully exhausted until rejected by the BOP's Central Office. 28 C.F.R. § 542, et seq.

12 Sanders v. Warden, supra, 2008 WL 4006755 at*2.

13     Respondent states that after the informal level, the next level requires use of a BP-9 form; if that initial formal level is denied, petitioner may proceed to the BP-10 form for filing an appeal to the Regional Director. MTD, p. 4. After receipt of the Regional Office decision, a prisoner's final step to exhaust the administrative process entails filing a BP-11 form to the BOP General Counsel in Washington, D.C. Id. Respondent also makes the point that extensions of time for deadlines may be granted at each step of the administrative grievance process and that even if an appeal is rejected as untimely, he may still appeal the rejection to the next level. MTD, p. 5, citing 28 C.F.R. §§ 542.14(b); 542.15(a); 28 C.F.R. § 542.17(c). Nevertheless, respondent posits any difficulties a prisoner may have in meeting time requirements must first be brought before the administrative agency for its review. Id., citing Martinez v. Roberts, 804 F.2d at 571.

24     Respondent contends that petitioner has failed to present any evidence that he exhausted available administrative remedies for either original prison disciplinary hearing at EDC or the re-hearing at FCI Herlong (MTD, p. 5), concerning the assessment of a 27-day good

6

conduct credit loss arising from the incident in which petitioner was found guilty of damaging government property.  Respondent states that the petition and its exhibits indicate that petitioner took part in the second step of the appeal process for the EDC hearing in April 2008 and the third step of the appeal process for the FCI Herlong hearing, but does not demonstrate that he completed the first step of seeking informal resolution for either hearing and offers no explanation for having proceeded that way, which amounts to "procedurally defective conduct" warranting dismissal.  MTD,. P. 5.

Within his petition, petitioner claims he has exhausted his administrative remedies.  Petition, p. 1.  Petitioner alleges that his first appeal was an appeal alleging a due process violation sent to the BOP Regional Office, which was denied.  Id., at 3.  Petitioner's second administrative appeal of a claimed due process violation is listed as having been presented to the BOP Central Office, for which petitioner claims a response was due for over three months but an answer was refused.  Id.  Petitioner contends that the administrative remedy process should be deemed exhausted since his appeal to the Central Office of the BOP was the last level of the administrative process and the failure of the Central Office to issue a decision should be construed as a constructive denial.  Id. at 9.  Petitioner claims that his Exhs. A (to the BOP Regional Office) & B (to the BOP Central Office) are copies of appeals he filed.  See Petition, pp. 17-23.  It appears that petitioner's Regional Office administrative appeal (apparently regarding a re-hearing) when housed at FCI Herlong and dated March 10, 2009, resulted in a response, dated April 14, 2009, indicating there would be a re-hearing at FCI Herlong.  Id., at 20. In the initial appeal at Herlong, petitioner explained his difficulty in receiving the form he sought to appeal the April 1, 2008, sanction at EDC, the privately run facility, and stated he had filed and mailed it on April 24, 2008, as required to the BOP Privatization Branch which claimed they never received it, notwithstanding that petitioner has documentation to show his mail was received and signed for as of May 1, 2008, Petition, at 18, & Exhs. C, D, E, at 24-29.  In his Exh. B to the petition, apparently a copy of his administrative appeal from Herlong to the BOP Central

1   Office petitioner, in a rather convoluted manner, lays out, among other things, that he had been
2   told at one point that the disciplinary sanction had been expunged and by another that his
3   rehearing was to be reset. Id., 22-23.
4               In his opposition, petitioner refutes respondent's contention that an informal level
5   of review is available in the context of a sanction received from a DHO hearing. Opposition
6   (Opp.), p. 1. Petitioner explains that having been dissatisfied with the warden's response after he
7   states that he filed a BP-9 form, he then filed a BP-10 form to the Regional Office and, upon his
8   dissatisfaction with that response, filed a BP-11 to the BOP Office in Washington, D.C., in
9   conformity with the regulations. Id. Petitioner fervently insists he has exhausted all of his
10  administrative remedies within the requisite time constraints. Id. at 1-2. He relies on the
11  acknowledgements he received and also asserts that the failure of the BOP in Washington, D.C.
12  to respond to a final level appeal means that the inmate can consider the appeal denied and can
13  proceed to federal court, although he does not cite his authority for this proposition. Id., at 2.
14  Petitioner revisits his underlying claim to assert that he seeks restoration of his lost good conduct
15  credits because he was not guilty of the "Code 218" charge of destroying government property
16  and that, in any event, the charge was also erroneous because a private, for-profit facility cannot
17  bring such a charge as it is obviously not a government facility. Opp., p. 2.
18              Although petitioner's exhibits do not delineate each step of the administrative
19  grievance process that he took with clarity as to separate hearings (although revolving around the
20  same issue), whether as to the original EDC hearing or any subsequent re-hearing at FCI Herlong,
21  respondent does not represent that petitioner has any administrative remedies remaining that are
22  available and does not make a showing in the circumstances that petitioner is subject to a
23  procedural bar, particularly in light of petitioner's evidence and his unrefuted argument that he did
24  not receive a response from the final administrative decision-maker at least as to one of his
25  appeals. Subsequent to his transfer to FCI Herlong, petitioner filed three notices of change of
26  address and is currently located at Adams County Correctional Center in Mississippi. See docket

# 17, # 22 and # 23.  The court finds that petitioner should be excused from further efforts to administratively appeal the loss of the good conduct credits at issue.  <u>Francis v. Rison</u>, 894 F.2d at 355.   The motion should be denied and this matter proceed.

<u>Petitioner's Requests</u>

On March 18, 2011, and on March 28, 2011, petitioner filed requests seeking the court's assistance as he is apparently being excluded from the prison law library.  Docket # 24 and # 25.  Petitioner states that he is once again incarcerated by the private company, CCA, that ran the private facility at which he has alleged he was wrongfully deprived of good conduct credits.  Id.  Petitioner contends he is being held in SHU without having committed any violation and is apparently being denied access to the law library due to his housing placement.   Id.

At this time, there does not appear to be a pending court deadline for the petitioner to meet.  Nevertheless, if petitioner is being and continues to be completely foreclosed from access to the facility law library, petitioner must provide the name or names of the individuals responsible for foreclosing his access and the circumstances of the denial of access. While usually persons or entities not parties to an action are not subject to orders for injunctive relief, <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 395 U.S. 100 (1969), the fact one is not a party does not automatically preclude the court from acting.  The court may find it necessary to invoke the All Writs Act, 28 U.S.C. § 1651(a), so that it does not lose its jurisdiction because petitioner is unable to prosecute this action due to having no access to the law library.

IT IS HEREBY ORDERED that the Clerk shall assign a district judge to this case.

IT IS HEREBY RECOMMENDED that:

1. Respondent's September 24, 2010 (docket # 13), motion to dismiss for failure to exhaust administrative remedies be denied;

2. Upon adoption of these findings and recommendations, should that occur, respondent be directed to file an answer within twenty-eight days and petitioner be directed to file any reply/traverse within twenty-eight days following service of the answer.

1   These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:   04/22/2011

/s/ Gregory G. Hollows
_____
UNITED STATES MAGISTRATE JUDGE

GGH:009
napo0940.mtd