IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ELIN NAPOLEON, | | |
| | Petitioner, | No. CIV S-10-0940 KJM GGH P |
| vs. | | |
| MICHAEL BABCOCK, Warden, | | ORDER & |
| | Respondent. | FINDINGS AND RECOMMENDATIONS |
| _____/ | | |

Introduction

Petitioner is a federal prisoner proceeding pro se with an application for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] By order, filed on February 7, 2012, pursuant to a motion brought by petitioner to strike any pleadings by respondent's then-counsel, Matthew Fletcher, who was private counsel for the federal government, was removed from representation of the respondent warden, and the United States Attorney was substituted in as counsel and the present warden of Federal Correctional Institution (FCI)-Herlong, Michael Babcock, substituted in, in his official capacity, for respondent. In addition, the AUSA assigned to the case was to inform the court whether or not private counsel's briefs on the merits and, if any supplemental

---

[1] Petitioner is evidently serving a sentence for conspiracy to import cocaine. Petition, p. 2.

1

briefs were to be filed, they were ordered filed no later than March 9, 2012.

By order, filed on March 15, 2012, the undersigned noted that the U.S. Attorney's Office had filed a response [answer] to the petition on March 9, 2012, and petitioner was directed to file any reply within thirty days of the March 15th order, after which the matter was to be deemed submitted. No reply was filed to the AUSA's answer and the time for doing so has expired and the matter has been submitted. Although petitioner did not file a reply to the answer by the U.S. Attorney, the court will, nevertheless, to the extent it is relevant consider petitioner's prior reply/traverse which had been filed in opposition to the prior answer filed by private counsel.

Petition

The court has previously set forth petitioner's claims in adjudicating respondent's former counsel's prior motion to dismiss and essentially recapitulates it here with any appropriate modification.[2] Petitioner, who was incarcerated at Federal Correctional Institution (FCI) - Herlong at the time of filing his petition, challenges the extended duration of his confinement, adhered to at Herlong, as a result of an alleged violation of his constitutional due process rights arising from, inter alia, a disciplinary hearing which resulted in his being deprived of twenty-seven (27) days of good conduct credits while confined at a private Eden,Texas detention facility run by a private company, Corrections Corporation of America (CCA). Petition, pp. 7-15[.][3] [ ] According to the case docket, petitioner is currently housed at privately run detention facility, Adams County Correctional Center.

Evidently to provide background to his challenge[4], petitioner claims to have been

---

[2] The motion to dismiss for failure to exhaust administrative remedies was denied by order, filed on June 6, 2011, adopting the findings and recommendations, filed on April 25, 2011.

[3] The undersigned references the pagination of the court's electronic docketing system.

[4] As demonstrated in the following paragraphs, petitioner casts allegations of retaliation and excessive force, which are possible civil rights claims, but which have nothing to do with an action in habeas corpus.

issued an incident report while he was at the Eden Detention Center (hereafter, EDC) in retaliation for his having spoken with Federal Bureau of Prisons (hereafter, BOP) personnel who visited EDC, the incident report resulting in his placement in the EDC special housing unit, or SHU. Petition, p. 7. After having been housed in the SHU for several months, an unnamed captain demanded that petitioner give up his sweatsuit, which he was permitted "due to the brutal cold" of his room. Id. This action was also retaliatory, according to petitioner, this time for petitioner's having mailed out a copy of a memo which he was mistakenly given which described a conspiracy to violate petitioner's constitutional rights. Id.[5] Petitioner was issued another incident report for refusing to give up his sweatsuit. Id., at 7-8.

On February 12, 2008, a hearing was held concerning, presumably, the second incident report regarding petitioner's refusal to give up his sweatsuit, wherein a Captain Overstreet[6] proposed to expunge it, if petitioner would return the memoranda, which, however, petitioner had already mailed to his legal representative. Petition, p. 8, Exh. A, p. 18. When petitioner refused to return the memo[s], the captain "became furious" and tightened petitioner's handcuffs to break his wrists, and took petitioner to his room, leaving him for hours in

---

[5] Although petitioner fails to describe the contents of the alleged memorandum or how it violated his rights, reference to an exhibit indicates that petitioner means two memos he was supposedly inadvertently given concerning an investigation into who had opened his certified privileged mail directed to the Regional Office. Petition (docket # 1), p. 18; Supplemental Exhibits from petitioner (docket # 4), pp. 5 -6. In a supplemental filing (docket # 4), petitioner includes unauthenticated copies of two memos dated November 9, 2007, concerning an apparent investigation into what happened to petitioner's October 4, 2007, letter addressed to the BOP in Dallas, Texas. One memo is from R. Overstreet to "L. McDaniels" stating: "I do open any mail that is entering the Special Housing unit that has not already been searched when I am here. I have not opened any mail that was clearly marked le[]gal mail." Dkt. # 4, p. 5. The second memo directed to a "Mr. Lee McDaniel" (apparently the same person to whom the other memo was addressed) from a mailroom clerk, identifying petitioner as the subject of the memo and indicating that after the clerk had taken a certified envelope to the post office, she then retrieved it from the post office because she had received what she thought was information indicating that petitioner wanted the certified mail back after which she sent it "with all the seg mail for the day to the lieutenant's office." Id. at 6.

[6] The court discerns the captain's name to be Overstreet, but only by reference to an exhibit. Petition, Exh. A, p. 18.

3

Case 2:10-cv-00940-KJM-GGH   Document 49   Filed 05/09/12   Page 4 of 18

"unbearable pain." Id. at 8. Petitioner lost control of his bowels, after which the captain returned with a SWAT team and dragged petitioner to a room where the captain activated the sprinkler system to flood the room in which petitioner had been placed. Id. Thereafter, the captain fabricated a charge against petitioner for "destroying government property," the property being the sprinkler head which the captain himself had tampered with. Id. As a result of this incident, petitioner was subjected to a disciplinary hearing in absentia,[7] at which petitioner was assessed the 27 days of good time credit loss. Id. at 8-9. See Order and Findings and Recommendations, filed on April 25, 2011, pp. 1-3.[8]

Legal Standards

While prisoners may not be wholly deprived of their constitutional rights, "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution... ." Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963 (1974). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. A prisoner's due process rights must be accommodated to the "legitimate institutional needs" of a prison. Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir.1989), citing Superintendent, etc. v. Hill, 472 U.S. 445, 454–455, 105 S.Ct. 2768 [] (1984). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and

---

[7] Notwithstanding that petitioner has claimed he was absent from the hearing at which his credits were lost, in one of his exhibits he states that on April 1, 2008, he appeared before a Discipline Hearing Officer (DHO), was found guilty, and was assessed a 27-day good time credit loss. Petition, Ex. A, p. 18. Possibly, petitioner means to signify that the actual assessment of the credit loss was not made at the hearing, but that is completely unclear. In any event, however, respondent does not dispute that petitioner was absent from the initial hearing.

[8] The April 25, 2011 Findings and Recommendations were adopted by Order, filed on June 6, 2011.

reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex.  Id. at 563–71.  Confrontation and cross examination are not generally required.  Id. at 567.

In addition, due process requires that the decision be supported by "some evidence."  Superintendent v. Hill, 472 U.S. at 455, 105 S.Ct. 2768, citing United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 106, 47 S.Ct. 302, 71 L.Ed. 560 (1927).  In Hill, the United States Supreme Court explained that this standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced ..."  Id.  "Ascertaining whether this standard is satisfied does not require an examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."  Hill, 472 U.S. at 455–456.  Instead, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  Id.

The Hill Court provided justification for the less demanding standard:

> We decline to adopt a more stringent evidentiary standard as a constitutional requirement.  Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. [] The fundamental fairness guaranteed by the Due Process Clause does not require the courts to set aside decisions of prison administrators that have some basis in fact. [] Revocation of good time credits is not comparable to a criminal conviction, [] and neither the amount of evidence necessary to support such a conviction, [] nor any other standard greater than some evidence applies in this context.

Id. at 456 [citations omitted].

"The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board."  Hill, at 457.  Even

5

where the evidence as in Hill "might be characterized as meager," if "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary," those findings must be upheld. Id.  Therefore, if the procedures outlined above are afforded to a prisoner, and "some evidence" supports the decision of the hearing officer decision, the requirements of due process are met. Hill, 472 U.S. at 455; Bostic v. Carlson, 884 F.2d at 1269–1270.

Argument & Analysis

Petitioner claims that he was placed, handcuffed, in a room where a captain activated a sprinkler system for the purpose of flooding the room with petitioner inside and that he was thereafter charged with "destroying government property," by the very captain who had himself tampered with the sprinkler head.  Petition, p. 8.  Petitioner thereafter claims that a discipline hearing officer (DHO) at the EDC held a hearing with petitioner in absentia and assessed the 27 days of good conduct credit against petition. Id. at 8-9.  Petitioner contends that while he appealed the forfeit of his time credits administratively to the highest level he had not received a response which was three months overdue, asking that the omission be deemed a constructive denial. Id. at 9.

Petitioner sets forth the following as a violation of his due process rights:
1) the Texas private detention facility fabricated the disciplinary charge in retaliation for petitioner's having exercised his right under the First Amendment to communicate with the Federal Bureau of Prisons (FBP) criticizing the conditions under which he was incarcerated at the Eden Detention Center (EDC); 2) petitioner suffered physical torture as set forth, in the handcuffing incident, because he exercised his right to mail to his legal representative a document wherein he had discovered there was a conspiracy to violate petitioner's rights; 3) although EDC is a private facility owned by the Corrections Corporation of America (CCA) and not an entity of the government, the private jail charged petitioner with destroying government property (which
\\\\\

had actually been broken by a lieutenant[9] to "ensnare" petitioner); 4) when petitioner mailed his administrative appeal to the FBP concerning the sanctions imposed on him at the disciplinary hearing held against him in absentia, the EDC removed the grievance sending only the empty envelope. Petition, at 12-14 & Exhibits C, D & E. Respondent frames petitioner's claims of violation of due process, seeking expungement of the disciplinary action and restoration of his lost time credits, in a more concise and apposite fashion:

> (1) the initial discipline hearing was held in absentia (C.R. 1 at 4 & 13);
> (2) he was charged with destruction of "government" property, but the property destroyed was that of a private prison (C.R. 1 at 13);
> (3) he was transferred away from his witnesses prior to the rehearing of the matter (C.R. 1 at 14); and
> (4) he challenges the sufficiency of the evidence claiming the Captain at the private prison facility activated the sprinkler in his cell and wrote an incident report alleging the inmate tampered with the device as part of a series of alleged retaliatory and abusive actions (C.R. 1 at 3).

Response, p. 47.

Petitioner avers that in light of the "irregularities" he identified, the Regional Office ordered the prison to conduct another DHO hearing of the "concocted" charges, but at that point petitioner had been transferred to FCI[10]-Herlong where the new hearing was conducted. Petition, p. 9. Petitioner claims that his transfer to FCI-Herlong meant that he could not call any witnesses that he could have at the original hearing located where the charged incident is alleged to have occurred. Id. Petitioner maintains that his transfer implicates his due process rights by depriving him of his witnesses and indicates that the transfer was for that purpose. Petition, p. 9. This allegation, although not framed as such, could be characterized as petitioner's fifth claim. In Exh. A to his petition (p. 18), which appears to be a copy of his Regional Administrative Remedy Appeal from FCI-Herlong, dated March 10, 2009, with respect to petitioner's appeal of the second

---

[9] Earlier petitioner identified the alleged culprit as a captain.

[10] Federal Correctional Institution.

1  hearing's assessment of a 27-day credit loss, petitioner attached a "statement of facts," which he
2  signed under penalty of perjury wherein he states, inter alia, that during the entire incident of
3  water pouring on him from an overhead sprinkler head, "an officer was posted outside of the cell
4  door" and "was armed with a video camera" but that nevertheless "not once did he have filmed
5  evidence of [petitioner] making any type of attempt to damage or destroy the sprinkler head in this
6  cell." Petitioner declares therein that the officer in charge of filming him "also did not witness"
7  petitioner making any attempt to destroy the sprinkler and "his name does not appear in the
8  incident report." Petition, Exh. A, p. 18. Petitioner seeks reinstatement of the 27 days of good
9  conduct time and expungement of the incident report. Id. at 10.

10        In his traverse, petitioner continues to claim that he did not destroy the sprinkler at
11 EDC, that the "Code 218" was "bogus" and was brought in retaliation for petitioner's having
12 refused to give Captain Overstreet the two memoranda, which had been mistakenly given to him
13 by a grievance officer, memoranda which related to a prior violation of EDC staff regarding an
14 alleged refusal to send his certified mail to BOP. Traverse, p. 1. In an effort to bolster his claim,
15 petitioner includes a copy of an EDC "inmate award receipt," dated June 27, 2008, showing that
16 petitioner was not charged for a sweatshirt and sweatpants valued at a total of $72.60. Petitioner
17 includes a notation on the receipt, dated May 30, 2011, wherein he links the inmate award to
18 being follow-up from petitioner's claim of having been tortured by Captain Robbie Overstreet on
19 February 12, 2008. See docket # 33, p. 4. Petitioner also includes a copy of documentation
20 indicating that he was also provided, in June of 2008, fifteen stamps by the CCA, after he had
21 filed a claim for that amount of postage on the letter that had been returned to him in October of
22 2007, rather than having been sent out to prison officials. Id. at 5. Petitioner points to the postage
23 reimbursement as "clear acknowledgment" by EDC staff of "their guilt" because "as the court
24 knows ...prison officials will never pay an inmate money back from the prison's personal
25 administration account... ." Traverse, p. 2. Petitioner emphasizes that the refunds followed the
26 accusation of damage to the sprinkler head and questions how they could have been made

following bad behavior." Id. at 4.[11]

What is not at issue in this petition are any procedural deficiencies at the initial hearing because petitioner was granted a re-hearing. Thus, the fact that the initial hearing was held outside petitioner's presence for any reason can give rise to no constitutional implications. The question at issue is whether petitioner received the process due him at the re-hearing, the initial hearing having been expunged, as respondent contends and the record clearly demonstrates. As, however, the validity of the second hearing nevertheless rests in part on the appropriateness of the initial charge, the court necessarily must review the underlying circumstances.

Respondent provides a background for the federal prisoner inmate discipline process. See Response (Resp.), pp. 4-5. The regulations governing BOP inmate discipline are issued, pursuant to 18. U.S.C. § 4042(a)(3),[12] under the Attorney General's direction "to provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States... ."

> The guidelines applicable here were published at 28 C.F.R. § 541.10, et seq. (2001), and are also re-printed with implementing instructions in Program Statement 5270.07, entitled Inmate Discipline and Special Housing Units; 28 C.F.R. §541.10 (eff. until August 2011).
>
> The prohibited acts carry varying degrees of sanctions based upon the seriousness of the act. 28 C.F.R. §541.13 (2007). Prohibited acts coded within the 100s are considered "Greatest Category" and carry more severe sanctions while violations in the 200s, 300s, or 400s are progressively less severe. 28 C.F.R. § 541.13 (2007). Any staff member who witnesses what he or she believes to be a prohibited act has the authority to write an incident report and to forward it to appropriate personnel for investigation. 28 C.F.R. §541.14(a). In institutions the investigation is performed by a Lieutenant, who utilizes his or her discretion to determine what, if any, charges should be filed against an inmate and whether informal resolution is appropriate. Id. If the investigation reveals sufficient

---

[11] Although respondent filed a "reply" to the traverse (actually what would be characterized as a "sur-reply"), the court will not consider the filing as such a filing is not contemplated within the applicable rules.

[12] Respondent actually identifies the provision as 18 U.S.C. § 4042(3).

9

evidence to support a charge and informal resolution is not deemed appropriate or not accomplished, the lieutenant must then refer the matter to a disciplinary committee for a hearing. 28 C.F.R. §541.15. In institutions, these committees are called Unit Discipline Committees (UDC). The UDC conducts the initial hearing. Id. The UDC then determines whether the matter should be resolved at that level or referred to the DHO for hearing. 28 C.F.R. §541.15(h). Once a UDC refers an incident report to the DHO for a hearing, the DHO has the authority to make findings consistent with the facts presented. 28 C.F.R. §541.16(c). In carrying out these responsibilities, the DHO is required to base their decision on "at least some facts." 28 C.F.R. §541.17(f).

Once the hearing has concluded, the DHO must prepare a written report of the proceeding which documents the inmate was aware of his rights, the DHO's findings, the specific evidence the DHO relied on in reaching these findings and a reason for the sanctions imposed. 28 C.F.R. §541.15(g). If imposing sanctions, the DHO has a wide range of sanctions to choose from. 28 C.F.R. §541.18. The sanctions that are available are dependent upon what severity category the offense is identified in. These are illustrated in 28 C.F.R. §541.l3, Table 3.[13]

Resp., pp. 4-5.

Petitioner was initially charged with a Code 218 offense, included among the prohibited acts at the high severity level now under 28 C.F.R. § 541.3: "Destroying, altering, or damaging government property, or the property of another person, having a value in excess of $100.00, or destroying, altering, damaging life-safety devices (e.g., fire alarm) regardless of financial value." Declarant McDaniel, EDC training manager and public information officer, has authenticated the Incident Report dated February 13, 2008, charging petitioner with a Code 218 violation, "destroying, altering, or damaging government property, having a value in excess of $100.00," Correctional Officer (C/O) J. C. Sanchez stated that while making rounds in the special housing unit on February 12, 2008 at about 2:50 p.m., he observed petitioner "destroy the sprinkler system in his cell," which caused the sprinkler system to erupt and flood his cell and the

---

[13] The court observes that the section references supplied by respondent have been subsequently updated, i.e., 28 CFR § 541.13 Code 218, is now 28 CFR § 541.3 Code 218. However, respondent appears to have been referencing the sections governing at the time of petitioner's hearings.

10

unit. Exh. A to Declaration of Lee McDaniel, Docket # 30-1 at 2[14]  There is also a statement included by petitioner on the incident report that the report was untrue and that he was handcuffed by Overstreet at the time. Id.  The accompanying photo of the damaged sprinkler head is noted as having been taken by a Captain Waddell. Docket # 30-1 at 4. Exh. C to the McDaniel Dec. is a copy of the EDC Discipline Hearing Officer Report of the hearing held on April 1, 2008. Therein, the charges are summarized as "Destroying, altering, damaging life-safety devices" and petitioner is found to have committed that violation.  Docket # 30-3, Ex. C, at 2-3. While this characterization fits within the parameters of a Code 218 violation, it is not precisely the charge of which petitioner was informed in the incident report.  However, as respondent argues, the acts alleged to have been committed by petitioner were sufficiently spelled out in the incident report. Resp., p. 6. The incident report also includes the investigator's comments and conclusions which state in part "I find the charged of Tampering with a security device and Destroying, altering, or damaging government property, having a value in excess of $100.00 to be true ...." Docket #30-1, at 3. In addition to the incident report/investigation, a photograph of the damaged sprinkler head taken on February 12, 2008 at 2:50 p.m. was considered as documentary evidence; petitioner was assessed 27 days loss of good conduct time. Id.

Exh. D to the McDaniel Dec., a copy of a memorandum dated April 1, 2008, states that petitioner refused to attend the initial hearing. Docket # 30-4 at 3. The same exhibit includes an April 15, 2009 memorandum from the Regional Director to FCI-Herlong Warden Yves (spelled here as "Ives") stating, inter alia:

> Inmate Napoleon requested a French speaking staff representative but waived his right to appear at the DHO hearing. The DHO did not arrange to have any staff representative present at the hearing, a right to which an inmate is entitled, even if the inmate waives his right to attend.

---

[14] The court observes that while respondent does not specifically and expressly adopt the briefing by prior private counsel, the AUSA does rely on the exhibits attached to the declaration of Lee McDaniel, EDC training manager and public information officer at docket # 30, which had been provided in support of the prior answer.

> Thus, we find it appropriate for a Unit Discipline Committee (UDC) to convene and advise inmate Napoleon of his rights before a DHO hearing. Inmate Napoleon is to be afforded the opportunity to appear before the DHO and present a defense to the charge. A copy of the original discipline action is attached to this response. After the DHO hearing, a report is to be prepared and provided to inmate Napoleon and to the DHA. Inmate Napoleon has been advised that a rehearing will take place.

Id., at 4.

The notice occurring for the second hearing which occurred on June 19, 2009, the operative hearing at issue here is as follows. The summary of charges for the rehearing is expressed as: "Destroying/Altering/Damaging Government Property over $100." Ex. E to McDaniel Dec., Docket # 30-5 at 3. Therein, it is noted that advance written notice in the form of a copy of the incident report was provided to petition on February 13, 2008, at 10:58 a.m. by a Lieutenant J. Gonzales. Id. In Exh. E, which contains the DHO report of the June 19, 2009, disciplinary re-hearing, the hearing actually at issue, it is noted that petitioner was provided advanced written notice of the charge, a copy of the Incident Report on February 13, 2008, by Lieutenant Gonzales (a day after the February 12, 2008, incident at issue). McDaniel Dec., Exh. E. Advance notice is not at issue with respect to the re-hearing but it is apparent that no re-notice was deemed necessary, and, in any case, in the "summary of inmate statement," it is set forth that petitioner stated that he had received a copy of the incident report. Id. The second report also states that petitioner was advised of his rights both on February 15, 2008, and on June 19, 2009. Id. Petitioner stated that he understood his rights and the report sets forth that petitioner neither requested a staff representative or witnesses. Id. Petitioner denied breaking the sprinkler head in his statement summary, indicating he was handcuffed at the time. Id. The court also finds that there was no insufficiency of notice to petitioner by the fact that he was charged for a Code 218 violation for destruction of government property at the re-hearing, notwithstanding that petitioner disputed the veracity of the charge, which is contained in the record.

\\\\\

1          To the extent that petitioner intends to allege that he was not provided sufficient
notice by the charge through the information contained in the incident report (which included a
photograph of the damaged sprinkler head), that is simply not reported by the record.

          To the extent that he alleges as improper notice that he was charged with
destroying government property as opposed to private property when housed at a private facility,
petitioner's technical arguments fail.  Petitioner never contended at the disciplinary hearing that
any misunderstanding of the ownership status of the property at issue, government or private,
somehow impeded his efforts in defending the charge against him.  His due process argument is
nothing more than a *post hoc* effort to allege confusion over a technical error.  See e.g., United
States v. Fleming, 215 F.3d 930, 935 (9th Cir. 2000) (indictment which alleged attempting to
influence, intimidate etc. a federal judge not insufficient notice because it omitted the statutory
words in a "pending proceeding"; United States v. Bass, 411 F.3d 1198, 1202 (10th Cir. 2005)
(indictment which referenced child pornography computerized pictures as .bmp files, as opposed
to .jpeg files, a technical error which did not deprive the defendant of notice); United States v.
Wells, 766 F.2d 12, 22 (1st Cir. 1985) (indictment did not fail to give sufficient notice for failure
to appear because of substitution of the particular institution at which defendant did not appear in
lieu of statutory language of failure to appear "before a court or judicial officer).

          As to petitioner's claims that the charge was false and retaliatory as a defense to his
conviction, petitioner simply supplies insufficient support for such a claim to be adjudicated with
an evidentiary hearing, i.e., there is no evidence aside from petitioner's conclusion; conversely,
there was sufficient "some evidence" to support the disciplinary charge.  The documentary
evidence included: the incident report, the photograph of the broken sprinkler head, the staff
memo documenting petitioner's refusal to attend the original DHO hearing, as well as forms
regarding inmate rights at a discipline hearing and notice of the discipline hearing and finally the
re-hearing notification. Exh. E to McDaniel Dec., Docket # 30-5, at 4.  Included under the section
entitled "specific evidence relied on to support findings," after noting, inter alia, that the one

1  witness who petitioner had wanted to call at the initial hearing had not been permitted at that
2  hearing "because he was not in the cell and could not observe what occurred in Cell 101," and that
3  at the second hearing petitioner had waived his right to a staff representative, the following was
4  articulated:

> The DHO reviewed and considered all of the evidence provided for the hearing which included the officer's written statement and your own statement. During the investigative phase of the disciplinary process and during the DHO hearing you denied breaking the sprinkler head. You stated that you were handcuffed while in Cell 101 and could not have been able to break the sprinkler head. The DHO considered your statement but questioned why this was not specified in the incident report or why you refused to participate in the original DHO hearing and provide a statement or defense on your behalf.

10  Id., at 4-5.
11         Because this is a case in habeas corpus, the holding of Bruce v. Ylst, 351 F.3d
12  1283 (9th Cir. 2003), does not pertain here. In Bruce, the Ninth Circuit held that a claim of
13  retaliation in the civil rights context could not be defeated on summary judgment simply because
14  there had been "some evidence" to support the disciplinary conviction itself. Here, there is no
15  civil rights claim; petitioner proceeds in habeas and contests the due process he received at the
16  disciplinary hearing. Petitioner cannot receive a trial *de novo* on the entire matter of his
17  disciplinary (actually it would be his third evidentiary hearing) without supplying some colorable
18  evidence suggesting retaliation caused the entire disciplinary to be fabricated; hence placing all of
19  respondent's evidence in jeopardy. The situation here is directly analogous to a defendant in a
20  criminal action who claims that the arresting officer fabricated the evidence leading to his arrest
21  because the officer was displeased with the actions of the defendant on other matters. If the
22  defendant lost on such a defense in his criminal trial, he does not get to have a trial *de novo* in
23  habeas simply because he repeats the allegation in federal court. The doctrine of sufficiency of
24  the evidence would be out the window. Such a situation in the disciplinary context would require
25  the federal courts always to retry the disciplinary, simply on petitioner's say so. Why even bother
26  to have administrative disciplinary hearings? Thus, a petitioner's claim of actual innocence in the

disciplinary habeas context should equate with the claim of actual innocence in the criminal context. That is the standard for an "actual innocence" claim is extremely high, see Carriger v. Stewart, 132 F.3d 463, 476-77 (9th Cir. 1997), and has certainly not been approached here.

Other than his claim of having been transferred so that he could not call a witness at the re-hearing, petitioner has not specifically challenged as missing any of the Wolff protections, and it is clear that the requirements of his having been provided written notice of the charges, adequate advance notice of the re-hearing, a written statement of the evidence upon which the DHO relied in finding petitioner guilty were met, nor did he seek the participation of a staff representative or show any need for such. Petitioner's present claim of not having been permitted to call a witness because he was transferred does not show up in the second DHO report as having been raised. Nor does petitioner support any such complaint with sufficient information. Petitioner does not herein set forth an offer of proof of precisely what relevant evidence this potential witness could have provided. To the extent that he believes the inmate would have provided testimony about what had occurred in the cell at issue, petitioner does not counter the finding at the re-hearing that at the initial hearing that this inmate was not present at the relevant time. Assuming that the witness could have testified to the fact that petitioner was handcuffed prior to being placed in the cell, it is unclear to the court how that would have meant he remained handcuffed while in the cell if the witness was not present, nor does it demonstrate that petitioner could not, even if handcuffed, have caused the sprinkler damage. At least as important, it does not appear that petitioner even sought the testimony of this witness at the second hearing. Although petitioner had been transferred from the site of the incident, it is not apparent why he could not have at least sought his testimony. Nor does petitioner offer an affidavit to the court in support of his claim of the relevance of this inmate's potential testimony from the inmate himself. As noted above in an exhibit to his petition, petitioner declared that an officer with a video camera was posted outside his door at the time of the incident and recorded no evidence of petitioner's having attempted to damage the sprinkler head, but there does not

appear to have been any effort made by petitioner to obtain information about this officer or to obtain any alleged video taping, other than to state that this officer's name was not in the incident report. While it is troubling that in the report of the re-hearing, the DHO officer stated that petitioner's having been handcuffed and unable to break the sprinkler head was not specified in the incident report when petitioner's statement to the effect that he had been handcuffed by Overstreet and placed in the cell and that he did not touch the sprinkler system was part of the statement in "comments of inmate" that was included as part of the incident report. It is possible that the DHO was specifically referencing only the description provided by the reporting employee of the incident where, indeed, no reference was made to petitioner's having been handcuffed. In any case, however, while petitioner was obviously consistent in denying that he had ever damaged the sprinkler head based primarily on his having been handcuffed at the time, it is not readily apparent unless petitioner had been handcuffed behind his back how his having been handcuffed obviated any possibility that he damaged the sprinkler head. As previously noted, even if this court were to characterize the evidence as "meager," this "record is not so devoid of evidence" that the disciplinary board's findings could be found to have been "without support or otherwise arbitrary." Superintendent v. Hill, 427 U.S. at 457. The court must recommend denial of the petition.

Petitioner's Requests

At the time of filing his requests for transfer, petitioner was once again housed at a private detention facility owned by Corrections Corporation of America, although it is not the one at which the incident at issue occurred. Petitioner claims that he has been threatened with being confined to the SHU until his August 2013 release date, or of being beaten, following a grievance petitioner filed, evidently at Adams County Correctional Center, on behalf of another inmate. Docket # 35. He claims that he was placed in "the hole" without a hearing in violation of due process and his requests to go to the law library have been refused while he is litigating two cases against CCA pro se (presumably including this one). Id. He seeks a transfer "to any other prison

company" and fears that his "life is in great jeopardy," apparently at any CCA facility, arising from a "direct conflict of interest." Id.  In a second request for transfer, petitioner includes a copy of a request he evidently submitted to have a book regarding prisoners' constitutional rights sent to him, which was apparently denied on May 31, 2011, because "books from the library can't be checked out." Docket # 37.  Petitioner therein was concerned that he might under the circumstances be unable to meet a future deadline in this case.  Id.

However, the court notes that, prior to making these requests, petitioner, on June 3, 2011, had already filed his traverse which the court has herein considered.  Although petitioner did not file a reply to the response filed by the substituted-in Attorney General's Office, there is no evidence in the docket of this court's orders having been returned unserved nor, e.g., of any request by petitioner for an extension of time to file a reply based on a lack of library access.  Petitioner's allegations about his conditions of confinement regarding events subsequent to the prison disciplinary hearing at issue simply do not come within this court's habeas jurisdiction.  Even if such requests were made in the context of a civil rights action, in general, prison officials' housing and classification decisions do not give rise to federal constitutional claims encompassed by the protection of liberty and property guaranteed by the Fifth and Fourteenth Amendments.  See Board of Regents v. Roth, 408 U.S. 564, 569, 92 S. Ct. 2701 (1972).  Nor does the Constitution guarantee a prisoner placement in a particular prison or protect an inmate against being transferred from one institution to another.  Meachum v. Fano, 427 U.S. 215, 223-225, 96 S. Ct. 2532, 2538 (1976); see Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir.1985) (prison authorities may change a prisoner's "place of confinement even though the degree of confinement may be different and prison life may be more disagreeable in one institution than in another" without violating the prisoner's due process rights); Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir.1984) (allegation that prison guard planted false evidence in retaliation for prisoner's failure to pay extortion demand fails to state section 1983 claim so long as procedural due process was provided).  Petitioner's inapposite requests for a prison transfer must be denied.

IT IS HEREBY ORDERED that petitioner's inapposite requests for transfer, filed on June 6, 2011 (docket # 35), and on June 20, 2011 (docket # 37), are denied.

IT IS HEREBY RECOMMENDED that the petition be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Petitioner need not seek a certificate of appealability.  Federal prisoner appeals from the denial of a habeas corpus proceeding under 28 U.S.C. § 2241 are not governed by the certificate of appealability requirement.  United States v. Cepero, 224 F.3d 256, 264–65 (3d Cir.2000); 28 U.S.C. § 2253(c)(1)(B).

DATED: May 8, 2012

   /s/ Gregory G. Hollows  
UNITED STATES MAGISTRATE JUDGE

GGH:009  
napo0940.ofr